UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FRANCKLIN AUTILA,
          Plaintiff,

          v.                          No. 21-cv-11677-DLC

MASSACHUSETTS BAY
TRANSPORTATION AUTHORITY,
          Defendant.

MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO STRIKE THE
COMPLAINT OR, ALTERNATIVELY, FOR MORE DEFINITE STATEMENT

CABELL, U.S.M.J.

     The plaintiff Francklin Autila ("the plaintiff") is a former "MotorPerson" who worked for the defendant Massachusetts Bay Transportation Authority ("MBTA") from November 2015 to his termination in August 2019. (D. 1-3, ¶¶ 2, 165). He alleges the MBTA terminated his employment in retaliation for filing a discrimination complaint with the MBTA Office of Diversity and Civil Rights ("MBTA ODCR") and a dual complaint with the Massachusetts Commission Against Discrimination ("MCAD") and the United States Equal Employment Opportunity Commission ("EEOC") in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1) ("Title VII"). (D. 1, pp. 3-4, 6). He also brings the following claims: (1) national origin discrimination premised

on his Haitian national origin in violation of Title VII; and (2) disability discrimination based on a failure to accommodate his diabetic diet and medication schedule in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 et seq. ("ADA"). (D. 1, pp. 3-4, 6).

The MBTA moves to strike the complaint under Fed. R. Civ. P. 12(f) ("Rule 12(f)") or, in the alternative, for a more definite statement under Fed. R. Civ. P. 12(e) ("Rule 12(e)"). (D. 12). In opposing the motion, the plaintiff addresses a number of the paragraphs the MBTA seeks to strike. (D. 14). He also asserts, inter alia, that the complexity of the case and a need to rely on circumstantial inferences to establish discrimination justify the length of the complaint. (D. 14). For reasons discussed below, the motion is allowed in part and denied in part. Certain paragraphs in the complaint are stricken; the request for a more definite statement is denied, because the complaint is not "so vague or ambiguous" such that the MBTA "cannot reasonably prepare a response," Fed. R. Civ. P. 12(e); but plaintiff is required to identify the date or time period applicable to paragraphs 83 to 86 and paragraph 227.

## I.  **BACKGROUND**

The complaint consists of a form "Complaint for a Civil Case" (D. 1, pp. 1-5) and a 266-paragraph statement of the claims (D. 1-3) captioned "Statement of Claim(2)" ("the statement"), which is

2

filed as an exhibit.[1]  The complaint also includes a one-page "Statement of Claim[s]" in three paragraphs with each paragraph summarizing the conduct that supports each of the foregoing three claims.  (D. 1, p. 6).  The more-lengthy statement elaborates the facts supporting the three claims.  (D. 1-3).

By way of example relative to the ADA claim, the statement recites that the plaintiff repeatedly informed his immediate supervisors about his diabetes and his need to adhere to a prescribed medication schedule and a recommended diet.  (D. 1-3, ¶¶ 16, 18).  "Train Starter Boyd," one of the plaintiff's supervisors, nevertheless routinely required the plaintiff to work beyond the scheduled end of his shift.  (D. 1-3, ¶¶ 18-20, 188-189).  The extended shift negatively impacted the plaintiff's ability to adhere to the medication schedule and recommended diet for his diabetes.  (D. 1-3, ¶ 20).

As to the Title VII national origin claim, MBTA supervisors mimicked the plaintiff's Haitian accent and deprived him of assistance afforded to non-Haitian employees.  (D. 1, P. 6, ¶ 1) (D. 1-3, ¶ 10).  The multiple criticisms of the plaintiff's Haitian accent prompted a union representative to complain to the plaintiff's direct supervisors.  (D. 1-3, ¶ 13).  Relately, Gina

---

[1]  The complaint adopts the statement by reference into the body of the complaint.  (D. 1, p. 4) (stating "[s]ee the attached . . . EXHIBIT 1 III Statement of Claim(2), relevant Facts"); *see* Fed. R. Civ. P. 10(c).

Westwater ("Westwater"), the MBTA's operations control center supervisor at the time, gave the plaintiff conflicting instructions in contrast to the assistance she gave to non-Haitian employees. (D. 1-3, ¶ 15).

Westwater was also involved in a December 10, 2018 incident on a northbound platform at the MBTA's Downtown Crossing station. (D. 1-3, ¶¶ 63-65, 70-76). The incident led to a noncriminal MBTA transit police department narrative report ("MBTA police report") involving the plaintiff. (D. 1-4, pp. 10-12). The narrative describes the plaintiff, the operator of a train at the station, as having a mental breakdown and refusing to drive the train as well as patrons describing him as "going crazy." (D. 1-4, pp. 10-11).

Shortly thereafter on December 13, 2018, the plaintiff's district supervisors placed him on unpaid leave, "which is a disciplinary action" that prevents the plaintiff from reporting to work. (D. 1-3, ¶¶ 164-166, 180, 196). On January 30, 2019, the plaintiff received a "five-day suspension for violations allegedly committed" on December 10, 2018. (D. 1-3, ¶ 175). A series of disciplinary hearings and resulting suspensions followed, "all based on a single alleged violation," i.e., "Absence." (D. 1-3, ¶ 176). Because the plaintiff was on unpaid leave throughout this time, however, he "was not allowed to report to work." (D. 1-3, ¶¶ 165, 176, 196). In fact, the plaintiff remained on unpaid leave

until August 13, 2019, at which time the MBTA terminated his employment. (D. 1-3, ¶¶ 165, 180). The proffered reasons in the termination letter are the plaintiff's "previous record" and, notably, "Absence." (D. 103, ¶ 195). By virtue of the "definition of absence" in the MBTA's attendance policy, the plaintiff is not considered absent while on unpaid leave, according to the complaint. (D. 1-3, ¶ 196).

More than two months before the plaintiff's termination, he filed a dual complaint with the MCAD and EEOC ("MCAD complaint"). The June 3, 2019 MCAD complaint provides a basis for the Title VII retaliation claim. (D. 1-3, ¶¶ 180, 192-193).

## II.  DISCUSSION

As noted, the MBTA moves to strike the complaint under both Rule 12(f) and, alternatively, requests a more definite statement under Rule 12(e). Addressing these requests seriatim, this court turns to the Rule 12(f) motion.

### A.  Motion to Strike under Rule 12(f)

#### 1.  Request to Strike Affidavit

The MBTA initially moves to strike an affidavit attached to the complaint in exhibit four (D. 1-4, pp. 1-8).[2]  (D. 13, pp. 7-

---

[2]  Although the MBTA asks to "strike Exhibit 4," the argument addresses only the affidavit within exhibit four. (D. 13, pp. 7-8). Exhibit four consists of the affidavit (D. 1-4, pp. 1-8), a one-page March 11, 2019 letter (D-4, p. 9), and the MBTA police report (D. 1-4, pp. 10-12). The MBTA's argument refers to the "*verified* statement" and quotes the statements in the

8).   According to the MBTA, the affidavit is unnecessary and includes baseless and scandalous allegations that the MBTA transit police department "'falsified' the Police Report." (D. 13, pp. 7-8).   The resulting damage to the MBTA's reputation is purportedly prejudicial.   (D. 13, pp. 7-8).   The 35-paragraph affidavit also purportedly contravenes Fed. R. Civ. P. 8(a)(2)'s requirement that a complaint "contain a 'short and plain statement of the claim.'" (D. 13, p. 8) (quoting Fed. R. Civ. P. 8(a)(2)).   Lastly, the MBTA submits that the affidavit "is not a 'pleading'" within the meaning of Rule 12(f) and asks this court to strike it under this court's "inherent authority" as opposed to under Rule 12(f).   (D. 13, p. 8).

Turning to the last argument, Rule 12(f) states that "[t]he court may strike from *a pleading* . . . any redundant, immaterial, impertinent, or scandalous matter."   Fed. R. Civ. P. 12(f) (emphasis added).   Hence, by its terms "Rule 12(f) applies only to pleadings" as opposed to, for example, motions made in pursuit of, or in opposition to, summary judgment. *Pilgrim v. Trustees of Tufts College*, 118 F.3d 864, 868 (1st Cir. 1997), *abrogated on other grounds by Crowley v. L.L. Bean, Inc.*, 303 F.3d 387 (1st Cir. 2002).   A "pleading" includes a complaint.   Fed. R. Civ. P.

---

affidavit.   (D. 13, pp. 2-3, 7).   Overall, the substance of the argument seeks to strike the affidavit as opposed to the entirety of exhibit four, i.e., inclusive of the MBTA police report and the one-page letter.   (D. 13, pp. 7-8).

7(a).  By virtue of Fed. R. Civ. P. 10(c) ("Rule 10(c)"), "[a] copy of a *written instrument* that is an *exhibit* to a pleading is a part of the pleading for all purposes."  Fed. R. Civ. P. 10(c) (emphasis added).

Examining whether an affidavit constitutes a "written instrument" under Rule 10(c) begins with the language of the statute embodying the rule.  *See Zimmerman v. Puccio*, 613 F.3d 60, 71 (1st Cir. 2010) ("[A]s with any act of Congress, '"our analysis begins with the language of the statute."'").  To avoid rendering the phrase "written instrument" superfluous, not all exhibits attached to a complaint are part of a complaint.  *See Duncan v. Walker*, 533 U.S. 167, 174 (2001) ("statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant") (citation omitted); *id.* (characterizing "duty 'to give effect, if possible, to every clause and word of a statute'" as "cardinal principle of statutory construction") (citations omitted).

At the outset, the analysis determines if "the statutory text is plain and unambiguous."  *Hernández-Miranda v. Empresas Díaz Masso, Inc.*, 651 F.3d 167, 171 (1st Cir. 2011) (citing *Carcieri v. Salazar*, 555 U.S. 379, 387 (2009)).  "If it is," the statute is applied "according to its terms."  *Id.* (quoting *Carcieri*, 555 U.S. at 387).  Determining if the term is plain and unambiguous "begin[s] with the ordinary meaning of the term[] . . ."  *Id.*  In

order to determine that "ordinary meaning," it is permissible to "consult dictionary definitions, interpretations given to the same terms by judicial construction, and the statutory context in which the words are used." *Id.*

Turning to the task, Black's Law Dictionary (11th ed. 2019) defines the term "instrument" as "[a] written legal document that defines rights, duties, entitlements, or liabilities, such as a contract, will, promissory note, or share certificate." *Instrument* Black's Law Dictionary (11th ed. 2019); *see, e.g., Smith v. Hogan*, 794 F.3d 249, 254 (2d Cir. 2015) (quoting definition of "instrument" in Black's Law Dictionary (10th ed. 2014), to elucidate meaning of "written instrument" in Rule 10(c)). Hence, the dictionary definition of "written instrument" is a "legal document that defines rights, duties, entitlements, or liabilities." *Instrument* Black's Law Dictionary (11th ed. 2019).

Examining judicial "interpretations given to the same term[]," *Hernández-Miranda*, 651 F.3d at 171, the Second and Third Circuits and a number of district courts conclude that "affidavits are not written instruments." *Smith*, 794 F.3d at 251 (affidavit attached as exhibit to "complaint is not a 'written instrument' that is deemed part of the complaint pursuant to Rule 10(c)"); *Rose v. Bartle*, 871 F.2d 331, 339 n.3 (3d Cir. 1989) (affidavit attached to amended complaint is not "'written instrument' as that term is used in Rule 10(c)"); *Matter of Gilfix*, Civil Action No.

21-CV-10330, 2021 WL 2805801, at *4 (E.D. Mich. July 6, 2021) (denying Rule 12(f) motion to strike affidavit attached as exhibit to counterclaim because "affidavits are not pleadings," exhibits to pleadings are "a part thereof only if they are 'written instruments'" under Rule 10(c), "and affidavits are not written instruments"); *Khan v. 7-Eleven, Inc.*, EDCV 14-00522 DMG, 2014 WL 12601018, at *6 (C.D. Cal. Nov. 3, 2014); *see also Fin. Acquisition Partners v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006). *But see N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 453 (7th Cir. 1998) (acknowledging prior precedent interpreting "written instrument" to include affidavits) (citing *Schnell v. City of Chicago*, 407 F.2d 1084, 1085 (7th Cir. 1969), *overruled on other grounds by City of Kenosha v. Bruno*, 412 U.S. 507 (1973)). The plaintiff's affidavit recounts his personal opinions about statements in the MBTA police report and, to a lesser degree, recites a few facts of what took place on December 10, 2018.[3] As such, the affidavit bears little semblance to a document that implicates legal rights or liabilities.

In addition, if an affidavit attached to a complaint constitutes a "written instrument," it "would severely compromise the ability of defendants and courts to test the legal viability

---

[3]   Somewhat similarly, the affidavit by the plaintiff in *Smith* recounts events on the day of his termination and his work history. *See Smith*, 794 F.3d at 253.

of complaints at the pleading stage, a right that is integral to federal procedure." *Smith*, 794 F.3d at 255. Relatedly, it would "blur the distinction between summary judgment and dismissal for failure to state a claim." *Rose*, 871 F.2d at 340 n.3. Paradoxically, it would allow consideration of an affidavit attached to a complaint when adjudicating a Fed. R. Civ. P. 12(b)(6) motion to dismiss, but not allow consideration of the same affidavit attached to the motion itself. *See id.* (stating it "would elevate form over substance by drawing" distinction between affidavit filed with answer and affidavit filed with motion to dismiss); *see generally Ironshore Specialty Ins. Co. v. United States*, 871 F.3d 131, 135 (1st Cir. 2017) (court may consider only narrow categories of documents outside complaint on motion to dismiss) (citation omitted).

In short, the MBTA is correct.  The affidavit is not a "pleading" within the meaning of Rule 12(f).  Specifically, it is not a "written instrument."  Fed. R. Civ. P. 10(c).  "As such, by its plain language, [Rule] 12(f) cannot be used to strike an affidavit or declaration."[4] *In re Apollo Gr., Inc. Sec. Litig.*,

---

[4]   This, in turn, moots the MBTA's arguments that the affidavit violates Rule 12(f) because it is duplicative, "immaterial, impertinent, or scandalous" within the meaning of Rule 12(f). It also moots the MBTA's argument that the affidavit violates the requirement in Fed. R. Civ. P. 8(a)(2) ("Rule 8(a)(2)") that a *complaint* contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  (D. 13, p. 8)

CV-04-2147-PHX, 2007 WL 778653, at *4 (D.D.C. Mar. 12, 2007) (citing *Pilgrim*, 118 F.3d at 868) (other citations omitted).  The issue therefore reduces to whether, as requested by the MBTA (D. 13, p. 8), this court should strike the affidavit from the record by exercising this court's inherent authority.

Importantly, the MBTA seeks to strike an affidavit attached to a complaint as an exhibit.  As discussed, Rule 12(f) applies to striking matters in a pleading (the complaint), and Rule 10(c) limits "exhibits to a pleading" to "written instruments."  Fed. R. Civ. P. 10(c).  Using this court's inherent power to fill the statutory gap in Rule 10(c) or, stated otherwise, to bypass the limiting construct of exhibits that are "written instruments" in Rule 10(c) is improper.  Succinctly stated, "the exercise of an inherent power cannot be contrary to any express grant of or *limitation* on the district court's power contained *in a rule or statute*."  *In re Petition for Order Directing Release of Records*, 27 F.4th 84, 90 (1st Cir. 2022) (quoting *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016)) (emphasis added).  Here, the MBTA invites the use of this court's inherent power to extend Rule 12(f) to strike an exhibit attached to the complaint, i.e., a pleading, which is not a "written instrument" under Rule 10(c).

---

(quoting Rule 8(a)(2)).  As explained, the affidavit is not part of the complaint.

In sum, use of Rule 12(f) is improper because the affidavit is not part of a "pleading." Further, use of this court's inherent power to strike the affidavit is improper because it bypasses Rule 10(c)'s limitation to "exhibits to a pleading," i.e., the complaint, which are "written instruments." "Principles of deference counsel restraint in resorting to inherent powers." *Degen v. United States*, 517 U.S. 820, 823 (1996). This case is no exception.

## 2.  <u>Request to Strike Portions of Complaint</u>

The MBTA next moves to strike certain portions of the complaint under Rule 12(f). (D. 13, pp. 7-9). Specifically, the MBTA argues that the complaint's repeated references to a "conspiracy" and related allegations are prejudicial and have no connection to the Title VII and ADA claims. (D. 13, pp. 3, 8-9). More broadly, and as a precursor to this argument, the MBTA sets out the legal framework for a Rule 12(f) motion to strike by defining "redundant" and "scandalous" and states that "Rule 12(e) is 'designed to reinforce the requirement in Rule 8(e) that pleadings be simple, concise, and direct.'" (D. 13, pp. 5, 7) (quoting *Dennison v. LaPointe*, Civil Action No. 06-40100-FDS, 2006 WL 3827516, at *1 (D. Mass. Dec. 21, 2006)).[5] Accordingly, the MBTA seeks to strike paragraphs 44, 47, 56, 59, 60 to 62, 92, 105

---

[5]  The "simple, concise, and direct" language is presently codified in Rule 8(d)(1).

12

to 132, 136 to 150, 153 to 154, 161 to 162, 172 to 173, 199, 205, and 209 to 210.  Separately, the MBTA seeks to strike the following paragraphs because they are argumentative, verbose, "irrelevant, repetitive, speculative and/or contain conclusions of law": 5 to 31, 36, 38, 44, 51, 66, 68, 77 to 82, 85 to 88, 90 to 91, 95, 98, 121, 135, 164, 170, 213 to 225, 227 to 230, and 233 to 266.  (D. 13, p. 9).

Relative to the first argument, the plaintiff states that "the word conspiracy only means concerted activities to retaliate against" him.  (D. 14, p. 8).  Specifically, he explains that the complaint does not bring a claim for conspiracy and asserts there was concerted action, including on the part of certain MBTA supervisors and a physician at an MBTA clinic, Dr. Robert D. Moses ("Dr. Moses"), to retaliate against the plaintiff for filing the MBTA ODCR complaint and thereafter the MCAD complaint.  (D. 14, p. 8) (D. 1, p. 6, ¶ 3).  Discrediting the MBTA's conspiracy argument because he did not bring a conspiracy claim, the plaintiff submits the complaint articulates a basis for the national origin and retaliation Title VII claims as well as the ADA claim.  (D. 14, p. 8).

Rule 12(f) endows this court with "considerable discretion" to strike "from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f); *Alvarado-Morales v. Digital Equip. Corp.*, 843 F.2d 613, 618 (1st

13

Cir. 1988) (district court has "considerable discretion" in deciding motion to strike). A statement is "immaterial" when "it has no essential or important relationship to the claim for relief . . ." *U.S. Bank Tr., N.A. as Tr. for LSF9 Master Participation Tr. v. King*, 1:19-cv-00119-JDL, 2020 WL 3064423, at *1 (D. Me. Sept. 9, 2020); *see Alston v. Town of Brookline, Massachusetts*, 321 F.R.D. 41, 43 (D. Mass. 2017) (immaterial matter defined as having "no relationship to the cause of action pled"). Similarly, an "impertinent" matter "consists of statements that do not pertain, and are not necessary, to the issues in question." *U.S. Bank Tr.*, 2020 WL 3064423, at *1. "[R]edundant matter . . . consists of allegations" which amount to "needless repetition of other averments." *Zurich Am. Ins. Co. v. Watts Regulator Co.*, 796 F. Supp. 2d 240, 246 (D. Mass. 2011). Scandalous matter constitutes statements that "improperly cast[] a derogatory light on someone." *Carney v. Town of Weare*, Civil No. 15-cv-291-LM, 2016 WL 320128, at *5 (D.N.H. Jan. 26, 2016) (citation omitted). As to scandalous matter, "it is not enough that the matter offends the sensibilities of the objecting party if the challenged allegations describe acts or events that are relevant to the action." *In re Gitto Global Corp.*, 422 F.3d 1, 12 (1st Cir. 2005) (citations omitted); *see, e.g.*, *Carney*, 2016 WL 320128, at *5 (citing case depicting as scandalous allegations of the defendant's wife having extramarital affairs); *see also Islam v.*

*Option One Mortg. Corp.*, 432 F. Supp. 2d 181, 199 (D. Mass. 2006) (allegations not stricken from "complaint merely because they sound scandalous").

It is well settled that motions to strike "are disfavored" and "rarely granted absent a showing of prejudice to the moving party." *Wilmington Tr., Nat'l Ass'n v. Howe*, Docket No. 2:21-cv-00278-NT, 2022 WL 1522247, at *4 (D. Me. May 13, 2022); *accord Boreri v. Fiat S.p.A.*, 763 F.2d 17, 23 (1st Cir. 1985) (motions to strike "disfavored in practice"); *see, e.g., Fraser v. Prudential Ins. Co. of Am.*, Civil Action No. 14-14161-GAO, 2018 WL 1940008, at *3 (D. Mass. Feb. 2, 2018) (denying motion to strike because movant did not show "how it was harmed or otherwise prejudiced"). That said, this court has the discretion to strike "clutter" as "repetitious and unnecessary" even without "a showing of prejudice." *Sheffield v. City of Boston*, 319 F.R.D. 52, 55 (D. Mass. 2016) (citing *Zurich*, 796 F. Supp. 2d at 246).[6] "As the moving party," the MBTA "bear[s] the burden of showing that the allegations should be struck under Rule 12(f)." *Alston*, 321 F.R.D. at 43 (citations omitted).

---

[6] Nevertheless, the court in *Sheffield* acknowledged that "Rule 12(f) motions are not typically granted without a showing of prejudice to the moving party." *Sheffield*, 319 F.R.D. at 55 (citing 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1382 at 421-22 (3d ed. 2016)).

As noted, the MBTA first argues that the conspiracy allegations have no connection to the Title VII and ADA claims and are prejudicial.  (D. 13, pp. 3, 8-9).  The import of the argument is that the allegations are "immaterial" under Rule 12(f), *see U.S. Bank Tr.,* 2020 WL 3064423, at *1 (describing "immaterial" as having no essential "relationship to the claim"), and prejudicial. As suggested by the plaintiff (D. 14, p. 8), however, and liberally construing the complaint (D. 1, 1-3), its use of the word "conspiracy" simply refers to concerted or coordinated action to engage in a wrongful act on the part of certain MBTA supervisors, Dr. Moses, and others.  *See Conspiracy* Black's Law Dictionary (11th ed. 2020) (defining conspiracy as agreement to commit unlawful act); *see also Conspire* Merriam-Webster Dictionary (11th ed. 2019) (defining conspire as "to join in a secret agreement to do" wrongful act);*see generally Narragansett Jewelry Co., Inc. v. St. Paul Fire and Marine Ins. Co.*, 555 F.3d 38, 41 (1st Cir. 2009) (examining complaint and applying "general rules of contract construction").

In addition, the majority of the MBTA's cited paragraphs are connected to the facts underlying one or more of the three claims notwithstanding the inclusion or insinuation of a "conspiracy."[7] *See U.S. Bank Tr.,* 2020 WL 3064423, at *1 ("motion to strike should

---

[7]   The MBTA also fails to show prejudice.

be denied unless it is clear that" matter has "no possible bearing on . . . subject matter of litigation"); *see also Gitto Global Corp.*, 422 F.3d at 12 (citations omitted). By way of example, the MBTA seeks to strike paragraph 109, which states the plaintiff's district supervisors:

> falsified [the plaintiff's] Attendance record knowingly with and/or without help from the MBTA clinic/Dr. Moses. They replaced medically pending [with] disqualified clinic and used it as justification to put [the plaintiff] on unpaid leave in order to count absence days.

(D. 1-3, ¶ 109). Thereafter, "unpaid leave," a disciplinary action, was purportedly changed to "unauthorized leave" to then justify the pretextual reason for terminating the plaintiff based on his absence.[8] (D. 1-3, ¶¶ 165, 180, 195-196). Hence, paragraph 109 includes relevant events that led to the plaintiff's termination and the purported pretextual basis for the termination. The MBTA's request to strike this paragraph is therefore unconvincing.

Having reviewed the cited paragraphs under the applicable legal construct of Rule 12(f) in the context of the MBTA's arguments, the following paragraphs, or portions thereof, are stricken from the complaint: 47, 56 (last sentence only), 105, 106 (last three sentences only), 130 (second and third sentences only),

---

[8] As noted, the MBTA's termination letter cites the plaintiff's absence and his prior record as the basis for the termination. (D. 1-3, ¶ 195).

136, 142, 199 (third sentence only), and 205 (first and third sentences only).   The remaining challenged paragraphs are not stricken under Rule 12(f) or Rule 8(d)(1) ("Each allegation must be simple, concise, and direct.").

Turning to the MBTA's second argument, and as noted previously, the MBTA contends that certain paragraphs are argumentative, verbose, "irrelevant, repetitive, speculative and/or contain conclusions of law." (D. 13, p. 9).   Legal conclusions, however, are not an appropriate basis to strike paragraphs in a complaint under Rule 12(f).   *Sheffield*, 319 F.R.D. at 54 ("fact that the allegations could be construed as legal conclusions is not grounds for striking the pleadings under Rule 12(f)") (citation omitted); *see Turner v. Hubbard Sys., Inc.*, 153 F. Supp. 3d 493, 496 (D. Mass. 2015) (Rule 12(f) motion "solely on legal grounds . . . not appropriate for a motion to strike").

As to the MBTA's other contentions, repetitive paragraphs are synonymous with "redundant" matters under Rule 12(f).   Similarly, irrelevant and/or speculative paragraphs provide a cognizable basis to strike "impertinent" matters under Rule 12(f).   *See U.S. Bank Tr.*, 2020 WL 3064423, at *1 ("'impertinent' means statements that do not pertain" to issues); *Silva v. Manley Berenson Montehiedra Mgmt.*, Civil No. 03-1890(JAG), 2005 WL 8167859, at *1 (D.P.R. Apr. 25, 2005) (striking statements in amended answer under Rule 12(f) and stating, "speculative averments . . . have no place

in pleadings before this court"); *John Hancock Life Ins. Co. v. Abbott Lab., Inc.*, 183 F. Supp. 3d 277, 303 (D. Mass. 2016) (striking prayer in complaint under Rule 12(f) as "wholly irrelevant or impertinent"), *aff'd in part and rev'd in part on other grounds*, 863 F.3d 23, 48 (1st Cir. 2017). Argumentative and verbose paragraphs fall within the reach of Rule 12(f) insofar as they constitute "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f); *see Hale v. Norcold, Inc.*, No. CV-18-03597-PHX, 2019 WL 3556882, at *4 (D. Ariz. Aug. 8, 2019) (stating that statements in complaint "pertain to the issues," and "[w]hile these statements may be argumentative, that is not a basis to strike enumerated by FRCP 12(f)"); *see also House of Providence v. Meyers*, 458 F. Supp. 3d 621, 647 (E.D. Mich. 2020) (rejecting argument to strike complaint as, inter alia, "argumentative"); *see generally Lewis v. Kennebec Cnty.*, 1:16-cv-00559-JAW, 2017 WL 6549758, at *3 (D. Me. Dec. 22, 2017) (motion to strike "appropriate *only* for content that is 'redundant, immaterial, impertinent, [or] scandalous'") (quoting Rule 12(f) and emphasis added).[9]

_____

[9]  In seeking to strike argumentative and verbose matter, the MBTA relies on a 1966 case in this district, *Martin v. Hunt*, 28 F.R.D. 35, 35 (D. Mass. 1961). (D. 13, p. 9). The complaint at issue in *Martin* included allegations against judges not named as parties, and detailed "matters of an evidentiary nature." *Id.* The complaint was also "argumentative, redundant and verbose, and contain[ed] . . . impertinent and scandalous" material. In contrast, the complaint in the case at bar, while argumentative

Examining the cited paragraphs[10] under the foregoing framework in the context of the MBTA's arguments, the following paragraphs are stricken: 51, 82, 135, 213 to 216,[11] 219, 222 to 224,[12] 225 (first sentence only), 233 to 234, 251, and 263.  The Rule 12(f) motion is otherwise denied with respect to striking the remaining paragraphs the MBTA challenges under 12(f).  By and large, these paragraphs are not repetitive, immaterial, impertinent, irrelevant, speculative, or scandalous, and prejudice is absent. The motion is also denied to the extent the MBTA seeks to strike the entire complaint or the remaining challenged paragraphs under Rule 8(a)(2) or Rule 8(d)(1).

**B.  <u>Motion for More Definite Statement under Rule 12(e)</u>**

---

and opinionated, largely hues to the underlying events leading to the termination and the workplace at the MBTA during the plaintiff's employment.  *Martin* is therefore distinguishable.
[10]  (D. 1-3, ¶¶ 5-31, 36, 38, 44, 51, 66, 68, 77-82, 85-88, 90-91, 95, 98, 121, 135, 164, 170, 213-225, 227-230, 233-266).
[11]  To elaborate, paragraphs 217 and 218 relate to emotional distress damages to the plaintiff's reputation and/or family relationships.  *See McDonough v. City of Quincy*, 452 F.3d 8, 22 (1st Cir. 2006) (Title VII retaliation case involving emotional distress damages, including humiliation, damage to reputation, and damage to family relationships).  As to paragraph 221, this court assumes the word "arms" is a typographical error intended to refer to "harms."  (D. 1-3, ¶ 221).
[12]  Relative to paragraph 223, the first sentence is stricken as irrelevant to the three claims.  Specifically, it describes that *employment lawyers* the plaintiff contacted seeking representation did not "take the time to realize" a conclusion drawn by Dr. Moses that the plaintiff was cognitively intact. (D. 1-3, ¶ 223).  The second sentence is redundant of paragraph 92.

As an alternative to striking portions of the complaint, the
MBTA asks that the plaintiff file a new or revised "complaint
setting forth" the "allegations and claims against the MBTA with
clarity and specificity."  (D. 12, p. 2) (D. 13, p. 15).  In a
detailed, threefold argument under separate headings, the MBTA
lays out the deficiencies.  In particular, the MBTA seeks a revised
complaint which: (1) articulates the factual basis for the
"conspiracy" in certain paragraphs and in exhibit four; (2)
identifies the causes of action by separate counts along with
"specific factual allegations" that support each count; and (3)
includes dates and timeframes, names of individuals and "the
connection to" the claims, and a factual basis for references "to
individuals' states of mind" regarding certain designated
paragraphs.  (D. 13, pp. 9-15).

    The plaintiff maintains the complaint is not so
incomprehensible that the MBTA cannot respond to the paragraphs.
He points out that the MBTA responded to the allegations during
arbitration.  He also articulates that the complaint sets out Title
VII claims for national origin and retaliation and the ADA claim
for "[r]easonable [a]ccommodations."  (D. 14, p. 8).

    "A motion for a more definite statement is appropriate only
where a complaint 'is so vague or ambiguous that the party cannot
reasonably prepare a response.'"  *Visco v. Creditors Relief, LLC*,
Case No. 20-cv-12303-DJC, 2022 WL 488495, at *5 (D. Mass. Feb. 17,

2022) (quoting Rule 12(e)).  When a pleading is "sufficiently clear to advise the defendants of the claims being brought against them," a more definite statement is not required.  *MacKenzie v. Pfizer, Inc.*, Civil Action No. 20-11550-NMG, 2021 WL 7451166, at *4 (D. Mass. Jan. 11, 2021).  Rule 12(e) motions are also "disfavored 'in light of the availability of pretrial discovery procedures.'" *Castillo v. SEIU 32BJ New England*, Civil Action No. 20-11220-ADB, 2020 WL 5237698, at *1 (D. Mass. Sept. 2, 2020) (citations omitted).  Overall, "[t]he rule 'is designed to remedy unintelligible pleadings, not merely to correct for lack of detail.'" *Id.* (quoting *Kahalas v. Schiller*, 164 F. Supp. 3d 241, 248 (D. Mass. 2016)); *see Hilchey v. City of Haverhill*, 233 F.R.D. 67, 69 (D. Mass. 2005) (Rule 12(e) motions address "not lack of detail" but "unintelligibility which" prevents "movant from 'determining the issues he must meet'") (citations and parentheses omitted).  Although "disfavored," Rule 12(e) motions are also "appropriate when a plaintiff has crafted a 'shotgun pleading' making it difficult or impossible to know which factual allegations in a pleading are intended to support which claims for legal relief." *MacKenzie*, 2021 WL 7451166, at *4 (citation omitted).

Examining the MBTA's first argument, the MBTA cites and quotes two cases which recite standards applicable to motions to dismiss

under Fed. R. Civ. P. 12(b)(6).[13]  (D. 13, p. 10).  These cases are
therefore distinguishable because, as detailed above, Rule 12(e)
motions employ a different standard.  Moreover, the complaint does
not plead a cause of action for conspiracy.  In fact, the plaintiff
unequivocally states he "did not file a [c]omplaint . . . on the
basis of conspiracy."  (D. 14, p. 8).  The MBTA's argument that
the complaint must include the identities, "the precise overt
acts," and the facts showing "that the MBTA worked in agreement
with any third-parties to conspire" is therefore inapt.  *Cf. United
States ex rel. Worthy v. E. Maine Healthcare Sys.*, 2:14-cv-00184-
JAW, 2017 WL 211609, at *30 (D. Me. Jan. 18, 2017) ("[R]elator
must *plead the conspiracy* with particularity in accordance with
*Rule 9(b)* by alleging facts as to (1) who the co-conspirators are,
(2) when or where they entered into an agreement to defraud the
government, or (3) what overt acts they took in furtherance of the
conspiracy.") (emphasis added).  Having reviewed each of the cited
paragraphs,[14] as modified to exclude paragraphs already stricken
in Roman numeral II(A)(2), they do not require additional

---

[13]   The two cases are: *Glassman v. Computervision Corp.*, 90 F.3d
617, 628 (1st Cir. 1996) ("complaint must contain 'factual
allegations. . . necessary to sustain recovery under some
actionable legal theory'"); and *Flaming v. Lind-Waldock & Co.*,
922 F.2d 20, 23-24 (1st Cir. 1990).
[14]   (D. 13, p. 11) (D. 1-3, ¶¶ 44, 47, 56, 59, 60-62, 92, 105-
132, 136-150, 153-154, 161-162, 172-173, 199, 205, 209-210).

specificity to enable the MBTA to "reasonably prepare a response." Fed. R. Civ. P. 12(e).

Turning to the second argument, the MBTA correctly points out that the complaint does not denote separate headings for each cause of action.  (D. 13, p. 11).  Citing Rule 8(a), the MBTA therefore submits that "[f]air notice requires" separately identifying and numbering each cause of action.  (D. 13, p. 11).  In accordance with Rule 8(a), a complaint must include "sufficient detail in the complaint to give a defendant fair notice of the claim and the grounds upon which it rests."  *Colón-Fontánez v. Municipality of San Juan*, 660 F.3d 17, 46 (1st Cir. 2011) (citation omitted).  In other words, "the plain statement must 'possess enough heft to show that the pleader is entitled to relief.'"  *Id.* (citations omitted).  Significantly, the complaint sets out the three claims on a single page with each claim in a separate paragraph summarizing the basis for the claim.  (D. 1, p. 6).  The complaint also refers to national origin, disability, and retaliation as well as Title VII and the ADA, albeit in the section identifying the basis for jurisdiction.  (D. 1, p. 3).  The lengthy statement elaborates, albeit in a somewhat disjointed and general manner, the facts supporting the claims.  Accordingly, and contrary to the MBTA's arguments, in the context of the liberally construed pro se complaint, the complaint provides fair notice, does not require enumerated headings under the circumstances, and does not require

separate counts under Fed. R. Civ. P. 10(b).  *See generally Silvia v. Raimondo*, C.A. No. 17-310-JJM, 2017 WL 11477124, at *1 (D.R.I. Sept. 29, 2017) (dicta stating, in context of adjudicating Rule 12(e) motion, that "courts must be 'solicitous of the obstacles that pro se litigants face'") (citation omitted).

The MBTA additionally argues the complaint does not clarify whether it asserts a retaliation claim under Title VII and/or the ADA. (D. 13, p. 12).  In this regard, the MBTA is mistaken because the complaint only asserts a Title VII retaliation claim.  By way of explanation, the ADA allows a plaintiff to assert a "claim for retaliation" as well as "a disability claim."  *See Freadman v. Metro. Prop. & Cas. Ins. Co.*, 484 F.3d 91, 106 (1st Cir. 2007) (citing *Soileau v. Guilford of Maine, Inc.*, 105 F.3d 12, 16 (1st Cir. 1997)).  The one-page summary of the three claims in three paragraphs in the complaint expressly identifies "ADA" in only one paragraph.  (D. 1, p. 6, ¶ 2) (stating MBTA violated "[m]y ADA Rights").  The paragraph alleges the plaintiff informed his supervisors about his "medical condition." (D. 1, p. 6, ¶ 2).  It further asserts the MBTA failed to provide the plaintiff "with reasonable accommodations" regarding his medication schedule and "recommended diet" even though he requested his supervisors "to respect" his medication schedule and diet.  (D. 1, p. 6, ¶ 2). This language is consistent with an ADA disability claim.  An ADA disability claim requires a disability, the plaintiff's inability

25

to perform his "job with or without a reasonable accommodation," and the employer, "despite knowing of the plaintiff's disability, did not reasonably accommodate it." *Id.* at 102.  The language in the ADA paragraph is also inconsistent with an ADA retaliation claim.  Specifically, the paragraph does not identify either an adverse action or a causal connection between the adverse action and the protected conduct, which are two components of a prima facie showing in an ADA retaliation claim.  *See Snell v. Neville,* 998 F.3d 474, 487 (1st Cir. 2021) (although complaining about lack of accommodation is protected conduct, prima facie ADA retaliation claim also requires "adverse action" and "causal connection between the protected conduct and the adverse action").

Placing the ADA and retaliation paragraphs in the context of other statements in the complaint's civil complaint form (D. 1, pp. 3-4), the civil complaint form premises jurisdiction "on the basis of National Origin, *Disability*, and Retaliation . . . in violation of Title VII [and the] ADA."  (D. 1, p. 3) (emphasis added).  The form also summarizes each of the three claims in a single sentence.  (D. 1, p. 4).  Here again, consistent with an ADA disability claim, as opposed to an ADA retaliation claim, the single sentence which best comports with an ADA claim states: "The defendant failed to provide me (a diabetic) with reasonable accommodation[s] that I have requested."  (D. 1, p. 3).  Viewing the complaint in its entirety, including the statement (D. 1-3),

26

the ADA claim is not a retaliation claim but, rather, a disability claim based on the MBTA's failure to provide accommodations for his medication schedule and recommended diet for his diabetes. Having clarified and identified the two Title VII claims (retaliation and national origin) and the single ADA disability claim, the MBTA is able to formulate relevant affirmative defenses in response. Its argument to the contrary (D. 13, p. 12) is mistaken.

Relatedly, the complaint's format in short paragraphs facilitates the MBTA's ability to form a response to each paragraph. The civil complaint form (D. 1, pp. 1-5) and the statements (D. 1, p. 6) (D. 1-3) all allow responses on a paragraph-by-paragraph basis. Moreover, the paragraphs in the lengthy statement (D. 1-3) largely consist of one or two sentences. Having stricken the affidavit (D. 1-4, pp. 1-8) such that the MBTA is not required to respond to this document, the MBTA's assertion of prejudice to respond to documents (D. 13, p. 12) is not convincing.[15] In sum, the MBTA's second argument does not warrant a more definite statement.

With respect to the MBTA's third argument, the MBTA seeks a more definite statement which: includes dates and timeframes for certain designated paragraphs; provides greater detail regarding

---

[15]   A response is not required to the one-page letter or the MBTA police report. (D. 1-4, pp. 9-12).

other designated paragraphs which are vague, ambiguous, or irrelevant; identifies the individuals and "the connection to" the claims with respect to additionally designated paragraphs; and sets out a factual basis for individuals' state of mind in other designated paragraphs. (D. 13, pp. 13-15). Because the MBTA's argument segments into these four subparts which apply to different designated paragraphs, this court examines the subparts seriatim.

Regarding the first subpart, the MBTA submits it is entitled to know the dates and timeframes "to determine any available statute of limitations." (D. 13, p. 13). To the contrary, where, as here, a defendant is "seeking additional information to flesh out a potential statute of limitations defense, the plaintiff is not obligated to provide such information at the pleading stage." *MacKenzie*, 2021 WL 7451166, at *3 (denying Rule 12(e) motion for more definite statement) (citations omitted). Because the only basis the MBTA offers to require the dates and timeframes of the designated paragraphs vis-à-vis this first subpart is the statute of limitations (D. 13, p. 13),[16] the decision in *MacKenzie*, 2021 WL 7451166, at *3-4, controls. Furthermore, the designated paragraphs are short and not "so vague or ambiguous that [the MBTA]

---

[16] The MBTA asks for the dates and timeframes for paragraphs 5 to 31, 36, 38, 44, 51, and 66. (D. 13, p. 13) (D. 1-3, ¶¶ 5-31, 36, 38, 44, 51, 66). As an aside, paragraph 24 includes the date.

cannot reasonably prepare a response." Fed. R. Civ. P. 12(e); *accord MacKenzie*, 2021 WL 7451166, at *4 (quoting Rule 12(e)).

Next, the MBTA contends that other paragraphs[17] are vague, ambiguous, and/or irrelevant. As such, they lack detail regarding what the paragraphs reference, when the misconduct took place, and who was involved, according to the MBTA. (D. 13, pp. 13-14). The MBTA accurately points out (D. 13, p. 13) that vague or ambiguous statements may warrant clarification "with details concerning precisely to what the statements are referring." *Alston,* 321 F.R.D. at 45.

Examining the contested paragraphs, the MBTA's description of paragraph 68 (D. 13, p. 13) shows the MBTA has the information to prepare a response. *See Vizcaino v. Isaac*, Civil Action No. 15-11565-LTS, 2016 WL 1163652, at *3 (D. Mass. Feb 2, 2016) ("In ruling on a Rule 12(e) motion, a court often considers whether the movant has knowledge of the information sought.") (citation omitted). The plaintiff is instructed to identify generally when the conduct described in paragraphs 83 to 86 involving "MotorPerson Barbara Martineau" took place and when the conduct described in paragraph 227 took place. *See Hilchey*, 233 F.R.D. at 70 (requiring

---

[17] The contested paragraphs are 68, 83 to 88, 213 to 225, 227 to 230, and 233 to 266. (D. 13, p. 14). Having stricken paragraphs 213 to 216, 219, 222 to 224, 225 (first sentence only), 233 to 234, 251, and 263, it is not necessary to address whether these same paragraphs require a more definite statement.

more definite statement supplementing paragraphs in complaint "so that the defendants can determine generally *when* the alleged misconduct took place") (emphasis added).  He is further instructed to provide this information as an addendum to the complaint.  The addendum should *only* cite the paragraph number and provide the date or time period the alleged conduct took place with respect to the paragraph.  Once the date or time period is added to paragraphs 83 to 86 and paragraph 227, these paragraphs will provide sufficient detail to enable the MBTA to "reasonably prepare a response" to them.  Fed. R. Civ. P. 12(e).  The remaining paragraphs are not so vague or ambiguous such that the MBTA cannot "reasonably prepare a response" under Rule 12(e).

Proceeding to the next subpart, the MBTA requests "the identities of the individuals involved in the incidents and the connection to [the] claims" for paragraphs 21 to 24, 26 to 27, 29 to 31, and 77 to 82.[18]  (D. 13, p. 14).  Paragraphs 21 to 24, 26 to 27, and 29 adequately connect to the Title VII national origin claim based on mimicking the plaintiff's Haitian accent, and they refer to the plaintiff and three other Haitian employees with noticeable accents by name.  Paragraphs 30 and 31 also connect to the Title VII national origin claim, and the MBTA can explore the identity of the "non-Haitian Employee" in paragraph 30 during

---

[18] Having stricken paragraph 82, it is not necessary to address whether this paragraph requires a more definite statement.

discovery.   Paragraphs 77 to 81 are neither vague nor ambiguous, and they enable the MBTA to prepare a response.

In the final subpart, the MBTA challenges paragraphs 85 to 88, 90 to 91, 95, 98, 121, 135, 164, and 170.[19]  (D. 13, p. 15). The MBTA seeks a more definite statement in these paragraphs consisting of a factual basis for the individuals' states of mind. (D. 13, pp. 14-15).  Consistent with notice pleading, "the actor's state of mind[] can be averred generally" when setting out the "minimal facts as to why" the actor engaged in the conduct. *Hilchey*, 233 F.R.D. at 70 (limiting more definite statement to providing "factual basis" by directing Hilchey "to supplement" paragraphs to allow defendants to determine "*when* the alleged misconduct took place, *what* it entailed and *who* was involved") (quoting *Educadores Puertorriqueños en Acción v. Hernández*, 367 F.3d 61, 67 (1st Cir. 2004)) (emphasis added).  Even under Fed. R. Civ. P. 9(b), which requires greater specificity than notice pleading under Rule 8(a), "intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  By analogy, a more definite statement for these paragraphs to set out facts "as to various individuals' states of mind" (D.

---

[19]  Having stricken paragraph 135, it is not necessary to address whether this paragraph requires a more definite statement.

13, p. 15) is not required.  The paragraphs are not so vague or ambiguous such that the MBTA cannot reasonably prepare a response.

## III.  **CONCLUSION**

In accordance with the foregoing discussion, the motion to strike and, alternatively, for a more definite statement (D. 12) is **ALLOWED** in part and **DENIED** in part.  On or before August 8, 2022, the plaintiff shall file the addendum to the complaint for paragraphs 83 to 86 and paragraph 227 which only: identifies the paragraph by number and provides the date or time period the alleged conduct took place for the paragraph.  The date or time period the alleged conduct took place specific to these paragraphs in the addendum shall constitute part of the complaint.  Because this court has allowed, in part, the motion for a more definite statement by requiring the addendum, the plaintiff shall serve the addendum on the MBTA on or before August 8, 2022.[20]  *See* Fed. R. Civ. P. 12(a)(4)(B) (setting time for responsive pleading as "14 days after *the more definite statement is served*") (emphasis added).

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED:  July 22, 2022

---

[20]  If warranted, the plaintiff may seek an extension of time to file or serve the addendum.  *See* Fed. R. Civ. P. 6(b).